UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 01-D-1456 (CBS)

KLESCH & COMPANY, LTD.,

    Plaintiff,

    v.

LIBERTY MEDIA CORP., et al.,

    Defendants.

\*    \*    \*    \*    \*

LIBERTY MEDIA CORP.,

    Counterclaim-Plaintiff,

    v.

KLESCH & COMPANY LTD.,
AND A. GARY KLESCH,

    Counterclaim-Defendants.

_____

**ORDER**
_____

THIS MATTER is before the Court in connection with Liberty's Motion to Review Clerk's Taxation of Costs filed May 17, 2005. Liberty's motion seeks $247,518.35 in costs that were not taxed by the Clerk of Court. For the reasons stated below, Liberty's Motion is granted in part and denied in part.

I.  INTRODUCTION

Plaintiff Klesch & Company ["Klesch"] brought suit against Defendants asserting claims of breach of fiduciary duty, fraud, breach of contract, negligent misrepresentation, intentional interference with prospective business relations, misappropriation of business value, promissory estoppel and unjust enrichment. Liberty asserted counterclaims of fraud, negligent misrepresentation, and declaratory judgment.

A jury trial on the legal claims and counterclaims was held from August 30, 2004 through September 28, 2004. The jury returned a verdict in favor of Defendants on Klesch's claims, and in favor of Klesch on Liberty's counterclaims. The Court issued Findings of Fact and Conclusions of Law on the equitable claims and counterclaim on March 29, 2005. The Court found in favor of Defendants on Klesch's equitable claims, and in favor of Liberty on its counterclaim for declaratory judgment. On March 30, 2005, this Court entered a judgment dismissing Klesch's complaint and Liberty's counterclaims consistent with the jury verdict and the Court's findings on the equitable claims and counterclaims.

II.  ANALYSIS

A.  Legal Standard Applicable to Motions for Review of Taxation of Costs

FED. R. CIV. P. 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court directs otherwise." Rule 54 "makes the award of costs presumptive". *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1204 (10th Cir. 2000). With respect to expenses not specifically allowed by statute, [t]he court's exercise of its discretionary power turns on whether or not the costs are for

materials necessarily obtained for use in the case." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir. 1988), *implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).

"'Necessarily obtained' does not mean that the materials and services obtained 'added to the convenience of counsel . . . and perhaps . . . made the task of the trial judges easier.'" *Touche Ross*, 854 F.2d at 1245 (quoting *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 234 (1964)). "The most direct evidence of 'necessity' is the actual use of materials obtained by counsel or by the court." *Id.* at 1246. However, "if materials or services are reasonably necessary for use in the case even though not used at trial, the court can find necessity and award the recovery of costs." *Id.* "This is an issue of fact to be determined by the district judge based on either the existing record or the record supplemented by additional proof." *Id.* at 1245.

In the court's determination of discretionary costs, "'[i]tems proposed by winning parties as costs should always be given careful scrutiny.'" *Id.* (quoting *Farmer*, 379 U.S. at 235). In other words, "[t]he 'discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute.'" *Id.* (quoting *id.*) "Even if the court finds the costs were for materials or services necessarily obtained, the amount of the award requested must be reasonable." *Id.* "The burden is on the party seeking costs . . . to establish the amount of compensable costs and expenses to which it is entitled and assumes the risk of failing to meet that burden." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002).

### 1.     Whether Liberty is Entitled to Any Costs Because it is not a Typical Prevailing Party

I first address Klesch's argument that the Court should deny Liberty any costs whatsoever or substantially reduce the costs available to it because Liberty is not a typical "prevailing party". The basis of this argument is that all of Liberty's counterclaims were dismissed. I reject this argument. First, Liberty did prevail in connection with Plaintiff's claims, and also prevailed on its equitable counterclaim for a declaratory judgment which was tied to Liberty's defense. *See Roberts v. Madigan*, 921 F.2d 1047, 1058 (10th Cir. 1990) (holding that it was not an abuse of discretion for trial court to award "full costs to the party prevailing on the majority of claims and the central claims at issue"), *cert. denied*, 505 U.S. 1218 (1992). Second, I find that Klesch waived this argument by not seeking review of the Clerk's taxation of costs within five (5) days of the award as required by Rule 54(d)(1); *see also Fleet Inv. Co., Inc. v. Rogers*, 87 F.R.D. 537, 540 (W.D. Okla. 1978), *aff'd*, 620 F.2d 792 (10th Cir. 1980).

Klesch also argues that the cost award should be reduced because of Liberty's misconduct in filing a motion that seeks non-taxable costs. I reject this argument. I find no misconduct in connection with the filing of Liberty's motion, as the costs sought by Liberty are within the Court's discretion to grant.

### 2.     Whether Liberty is Entitled to Fees of the Court Reporter

Liberty sought $18,819.28 in costs for the fees of the court reporter in its bill of costs. The Clerk of Court declined to award any costs associated with same. Liberty requests that the Court exercise its discretion to award $17,519.03 for the cost of obtaining

-4-

daily trial transcripts and a realtime transcript associated with the pretrial conference. The costs sought are broken down as follows: (1) $9,347.25 for a daily transcript; (2) $3,650.90 for another copy of the daily transcript, and (3) $4,520.88 for the realtime transcript. Ex. C. to Liberty's Mot.

Klesch asserts that none of these costs (and particularly the realtime transcript) were necessarily incurred by Liberty for use at trial, but were used purely for Liberty's convenience, and that Liberty has not met its burden of showing that it actually used these transcripts at trial. Klesch further argues that it should not be taxed these costs when the parties agreed to share the costs before trial.

Turning to my analysis, fees for daily trial transcripts may be taxed under § 1920(2) if they were "'necessarily obtained, as judged at the time of transcription.'" *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 483-84 (D. Colo. 1997) (quoting *Touche Ross*, 854 F.2d at 1248) (additional citation omitted). In *The Wharf*, both parties ordered selected portions of the daily trial transcript. *Id.* at 483. Judge Kane found that "the nature and length of the trial (11 weeks) necessitated the use of numerous conventions such as weekly mini-summations, videotaped depositions and demonstrative exhibits that may have been unnecessary in a shorter or less complex trial." *Id.* at 484. He further found that since both sides ordered and used the daily transcripts in their presentation of the case, the transcripts were "necessarily obtained and are properly taxable pursuant to 28 U.S.C. § 1920(2)". *Id.*

On the other hand, the Tenth Circuit affirmed the trial court's denial of costs for daily transcription costs where "[n]either the record nor the proceedings. . . reveal that the daily

transcript was necessary for either counsels' use at trial or for the court's handling of the case" and the parties failed to obtain court approval of this special expense prior to trial. *Touche Ross*, 854 F.2d at 1248. It noted, however, that "[i]f the issues in th[e] case were so complex as to justify overlooking the lack of pretrial approval [for such costs], a court could have used its discretion to award the cost where the daily copy proved invaluable to *both* the counsel *and* the court." *Id*. (emphasis in original). *Touche Ross* referred to *Farmer* as setting forth the appropriate guidance on the court's discretionary power. *Id*. *Farmer* held that the trial judge's decision not to award costs for daily transcripts was proper where the trial was not a complicated or extended one and the parties were not required to submit briefs and proposed findings. *Farmer*, 379 U.S. at 234.

In short from the above, an award of costs for daily transcripts is not proper where the transcripts were primarily for the convenience of the parties and were not essential to the presentation of the case. However, an award of such costs may be proper where the transcripts were essential to the case and the amount sought is reasonable.

In this case, I find that the trial involved complex issues litigated over a substantial time frame. I further find that Liberty has shown that the daily transcript was actually used by it at the trial in connection with Klesch's testimony. *See* Ex. D to Liberty's Motion. Further, Liberty has shown that it used these transcripts to prepare its proposed findings of fact on the equitable claims. While I acknowledge that some courts have held that an agreement to share the cost of daily transcript may be a ground for denial of such costs,[1]

---

[1] *See Thompson v. Duralite Co., Inc.*, 524 F.2d 577, 590 (3rd Cir. 1975); *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, No. 78-714-RE, 1990 WL 298887 at *1 (D. Or. 1990).

the Tenth Circuit has indicated, and I agree, that the decision to share the costs of a daily transcript is "some evidence of the necessity of the daily transcript." *Touche Ross*, 854 F.2d at 1247.

Based on the foregoing, I find that Liberty is entitled to an award of costs for the daily transcript in the amount of $9,347.25. I decline, however, to award Liberty for the cost of an additional hard copy of the daily transcript (in the amount of $3,650.90) since I find this copy was merely for the convenience of counsel. I also decline to award Liberty the cost of the realtime transcript ($4,520.88) since I find that Liberty has not shown that it was necessary for the trial.

### 3. Whether Liberty is Entitled to Additional Fees for Exemplification

Liberty's original Bill of Costs submitted to the Clerk of Court sought $172,512.17 in fees for exemplification and copies of papers necessarily obtained for use in the case (itemized at Schedule 2 to the Bill of Costs). The Clerk of Court taxed only $20,224.50 for such fees, which included costs for photocopying exhibits, conversion of trial exhibits by legal assistants, equipment rental, equipment rental for editing videotaped depositions, videotaped depositions synchronization, and videotape editing. Liberty requests the taxation of an additional $127,909.82 in exemplification costs for the fees and expenses of Liberty's multi-media consultant, Trial Graphix. Liberty states that the Clerk of Court represented to counsel that he would not tax such fees and expenses because that is a matter left to the discretion of the Court.

Klesch opposes an award of these costs, stating that the documentation regarding Trial Graphix does not explain how the extraordinary figure sought by Liberty was arrived

at.[2] Klesch also argues that these costs are not identified as taxable in the relevant rules and statutes, and that Liberty did not seek approval of such costs prior to trial. Finally, it is argued that an award of such costs may give Liberty a double recovery since some of the costs sought may be duplicative of the Clerk's taxation of costs.

Turning to my analysis, I first note that to the extent the Tenth Circuit used to require pretrial approval of costs for such costs to be awarded, *see Euler v. Wallace*, 295 F.2d 765, 767 (10th Cir. 1961), this is no longer the rule. The Tenth Circuit held in 1997 that the Supreme Court's decision in *Farmer* was inconsistent with *Euler* to the extent that it prohibited a district court from taxing costs for trial exhibits absent pretrial approval. *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1476 (10th Cir. 1997) (citing *Farmer*, 379 U.S. at 235). Thus, *Tilton* rejected "a bright-line rule and instead examine[d] whether the circumstances in a particular case justify an award of costs for trial exhibits." *Id.*

I find that the circumstances of this case justify an award for some portion of the costs sought by Liberty. As stated previously, this was a complicated case involving extensive exhibits. The display of these exhibits through the use of Trial Graphix was both useful and necessary to communicate the issues effectively to the jury and the Court. Indeed, the nature and context of the information being presented, such as detailed contracts that could be highlighted as to relevant sections, made this type of presentation vital to the case.

Thus, I find that these costs may properly be awarded as exemplification costs. *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("[s]o long as the means

---

2  Liberty's reply clarifies this.

of presentation further the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification . . . [t]his approach allows appropriate room for the more sophisticated types of multi-media presentations made possible by technological advances"), *Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, No. 00 C 7620, 2004 WL 557388 (N. D. Ill. 2004) (collecting cases in which courts have upheld an award of costs for graphic services, multimedia equipment rental and multi-media presentations); *see also Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35 LRR, 2004 WL 1234130 (N.D. Iowa 2004). The necessity of this presentation is also supported by the fact that both parties used such presentations.

However, I find that the costs sought by Liberty in connection with its multi-media consultant are excessive. In that regard, I note that Liberty is seeking $115,425.00 for on-site consulting services by Trial Graphix and $12,484.82 in travel costs for its consultants.[3] The travel costs are clearly excessive, and could have been alleviated altogether if Liberty had retained a local multimedia firm. Thus, I will not award those costs.

As to the $115,425.00 sought for on-site consulting, I also find that this is excessive. First, I note that Trial Graphix's invoices state that the multimedia consultant's time for such services is billed at a minimum of 10 hours a day, even where the consultant did not render services for that amount of time. Second, I note that the August 31, 2004 invoice reflects services by two employees for Trial Graphix when only one could have been used. Finally, the hourly rate for each of these employees is $225.00 which I believe is

---

3  These costs are not duplicative of what the Clerk of Court taxed.

excessive. I find that a reasonable fee for such services given the length of the trial in this case and the complexity of the issues is $50,000.00, and I award that amount to Liberty.

### 4. Whether Liberty is Entitled to Additional Costs Incident to Taking of Depositions

The Clerk of Court taxed $31,518.57 for "costs incident to taking of depositions." Liberty represents that these costs were for depositions that were introduced at trial as part a party's case in chief. Liberty seeks an additional $39,542.26 in deposition costs, including costs associated with depositions of (1) witnesses who testified at trial, (2) witnesses whose depositions were excerpted and exchanged for use at trial, and (3) a witness who was listed on the pretrial order and who appeared on a party's witness list.

Klesch opposes such an award, asserting that the costs encompass deposition transcripts of 30 witnesses and that the amount sought is excessive. Klesch further asserts that not only is Liberty seeking non-taxable costs for unnecessary depositions, but Liberty is also seeking to be reimbursed for shipping fees and multiple forms of transcripts used for Liberty's convenience. Klesch concludes that Liberty has offered no supporting authority for its attempt to recover these costs.

Turning to my analysis, § 1920 "permits recovery of depositions costs 'necessarily obtained for use in the case.'" *Mitchell*, 218 F.3d at 1204 (quoting the statute). The Tenth Circuit holds that "'this authorizes recovery of costs with respect to all depositions reasonably necessary to the litigation of the case.'" *Id.* (quoting *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1550 (10th Cir. 1987)). I previously adopted the following test to determine which depositions costs are recoverable:

> (1) costs for depositions taken solely for discovery purposes or for counsel's convenience are not taxable; (2) costs of both the stenographic transcription and the videotaping of the deposition of individuals who later testified at trial are taxable; (3) costs for depositions cited in summary judgment briefs are taxable; (4) costs of depositions where depositions excerpts were exchanged for use at trial are taxable; (5) for categories 3 and 4 above, only the cost of the stenographic transcript is taxable, unless the witness also testified at trial; (6) costs for depositions of individuals who did not testify at trial or appear on the parties' pretrial order and one of the parties' final witness lists are not taxable, unless these depositions fall into category 3 or 4 above; and (7) costs of the stenographic transcripts of individuals who did not testify at trial but whose names appeared on the pretrial order as well as one of the parties' final witness list are taxable.

*Karsian v. Inter-Regional Financial Group, Inc.*, 13 F. Supp.2d 1085, 1088 (D. Colo. 1998).

Following the test I adopted in *Karsian*, I find that the deposition costs sought by Liberty are proper to the extent they involve routine stenographic transcription and videotaping. While Klesch argues that the costs are excessive, Liberty notes that many of the most expensive depositions were conducted in New York at the behest of Klesch. Further, given the complexity of the issues in this case, I do not find the number of depositions or the expenses associated with same to be excessive. I decline, however, to award Liberty costs for expedited transcripts in the amount of $4,816.70. Accordingly, Liberty is awarded $34,725.56 in connection with costs incident to the taking of depositions.

### 5.     Whether Liberty is Entitled to Additional Witness Fees

Liberty sought $64,615.25 in fees for witnesses in the Bill of Costs. The Clerk of Court taxed $2,068.00 for such fees. Liberty requests that the Court award an additional $62,547.25 in witness fees, as itemized in Liberty's First Amended Bill of Costs (Ex. A, p. 3 to Liberty's motion). The witnesses for whom fees are sought include Olaf Castritius

(who resides in Konigstein, Germany), Miranda Curtis (who resides in London, England), Craig Elson (who resides in Chicago, Illinois), Paul Landen (who resides in London), Henrik Schliemann (who resides in London), and Dirk Schroeder (who resides in Colon, Germany). Liberty asserts that it paid travel and subsistence fees for these witnesses to be deposed by opposing counsel. Further, four of these witnesses (Curtis, Elson, Landen and Schroeder) also testified at trial. The two witnesses who did not appear at trial had their depositions introduced by Klesch and Company.

In response, Klesch asserts that fees should not be assessed for Liberty's defense experts Castritius and Schliemann who came to the courthouse but never testified. Klesch argues that these experts obviously had no relevant testimony in support of Defendants' case, and Defendants unnecessarily increased the costs of litigation by having these experts. Klesch also argues that the fees sought are excessive because the witnesses traveled first class and that Liberty cannot seek such costs pursuant to 28 U.S.C. §1821(c)(1). Finally, Klesch objects to the costs sought in connection with Dirk Schroeder's seven day stay in Denver during the trial since he testified for only one afternoon.

Turning to my analysis, 28 U.S.C. § 1821(c)(1) states that "[a] witness who travels by common carrier shall be paid for the actual expenses of trial" so long as the use of the common carrier was "at the most economical rate available." Fees for travel to a deposition are covered as well as travel to trial, at least where the deposition was actually introduced at trial. *Karsian*, 13 F. Supp.2d at 1091-93. While this rule has been applied by some courts only to witnesses who traveled 100 miles or less to the place trial is held

(*i.e.*, within the range of the Court's subpoena power), the Tenth Circuit holds that "[a] district court has discretion to approve trial costs in excess of 100 miles from the place at which trial is held." *Fleet Inv. Co. v. Rogers*, 620 F.2d 792, 794 (10th Cir. 1980).

In this case, witnesses traveled more than 100 miles to their deposition site and to the trial. I find that such costs should be recovered to the extent they are reasonable. Klesch chose to sue Defendants in Colorado, knowing that many important witnesses resided in Germany and the United Kingdom. Klesch further asked the witnesses to come to New York for their depositions, rather than having counsel fly to the witnesses' residence to be deposed. This undoubtedly saved Klesch money. *See West Wind Africa Line, Ltd. v. Corpus Christi Marine Serv. Co.*, 834 F.2d 1232, 1237 (5th Cir. 1988).

Accordingly, I find that Liberty should be awarded additional witness fees in connection with the witnesses at issue. However, I find that some of the fees sought by Liberty are excessive and violate the reasonableness requirement of § 1841(c)(1). Specifically, I find that the costs sought for international travel are excessive and are not "at the most economical rate reasonably available." *Id.* For example, the invoice submitted by Miranda Curtis for airfare seeks $9,230.80 for her travel first class on the Concorde from London to her deposition in New York. Paul Landon seeks travel costs from London to his deposition in New York of $6,954.71 and from London to Denver for trial in the amount of $9,970.02. Liberty admits that at least four of the witnesses traveled business class, which the Court notes is significantly more expensive than a coach fare.

I therefore reduce the costs awarded for all international flight to $1,500.00 per flight, a sum that I find to be reasonable.[4] I also reduce the attendance fees and subsistence costs sought as to Dirk Schroeder's seven day stay in Denver during the trial. Schroeder only testified one afternoon at trial, and I find that reimbursement of costs for a full week is excessive. I will reimburse costs for three days, meaning that the attendance fees are reduced from $280.00 to $120.00, and the subsistence costs are reduced from $992.00 to $477.00. The total award of witness fees is thus reduced from $64,615.15, the amount requested by Liberty, to $18,152.69.[5]

III. CONCLUSION

Based upon the foregoing, it is

ORDERED that Liberty's Motion to Review Taxation of Costs Assessed by the Clerk is **GRANTED IN PART AND DENIED IN PART**. Liberty is awarded the following additional costs requested in its motion: (1) costs for the daily transcript in the amount of $9,347.25; (2) costs for exemplification related to Trial Graphix in the amount of $50,000.00; (3) costs incident to the taking of depositions in the amount of $34,725.56; and (4) costs for witness fees in the amount of $18,152.69. The total amount of costs awarded pursuant to Liberty's motion is $112,225,50. All other costs requested in Liberty's motion are denied.

---

[4] This reduction in cost applies to the flights of Castritius, Curtis, Landen, Schliemann and Schroeder.

[5] The fees awarded as to each witness are as follows: $1,976.00 for Castritius, $3,356.00 for Curtis, $3,871.00 for Landen, $1,500 for Schliemann, and $4,073.00 for Schroeder. The fees sought for Elson are not reduced.

Dated: October 26, 2005

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge